**Loren Jay COLMAN, et al.,**
**Respondents,**

v.

**Michael S. MERTES, et al., Appellants.**

**No. C6–86–2221.**

Court of Appeals of Minnesota.

June 23, 1987.

Review Denied Sept. 18, 1987.

Michael L. Perlman, Nodland, Conn, Nordaune & Perlman, St. Louis Park, for respondents.

David J. Meyers, Brenner, Workinger, & Thompson, P.A., Minneapolis, for appellants.

Heard, considered and decided by FOLEY, P.J., and FORSBERG and STONE\*, JJ.

## OPINION

STONE, Acting Judge.

This appeal questions whether the trial court properly applied the statutory requirements for a prehearing attachment of property and for proceedings in replevin. Appellants ask for vacation of the writ of attachment and replevin order, for a remand to the trial court for judgment in their favor, and for an award of actual damages, including reasonable attorney fees, and punitive damages. We affirm.

## FACTS

In August 1985, respondents Loren and Eileen Colman sold the Casey Jones Bike and Cross Country Ski Shop to appellants Michael and Jill Mertes for $88,300. Appellants paid the Colmans $17,000 as a down payment, and gave them a promissory note for the balance, secured by the business inventory and accounts receivable. The promissory note provided for monthly payments of $700, a $5000 balloon payment due on August 31, 1986, and a final balloon payment of $65,417, due in August 1989. Appellants further agreed to operate the store as a retail bicycle and ski shop until the purchase price was paid in full, and to maintain inventory levels equal to not less

---

\* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

than 60% of the unpaid principal balance of the promissory note. Failure to maintain the agreed-upon inventory levels and to cure the default within 45 days of written notice and demand from respondents would result in the entire unpaid balance of the promissory note becoming immediately due and payable.

Appellants remained current on the promissory note through the August 1986 monthly payment, but they did not make the $5000 balloon payment due on August 31. Respondents eventually received $2000 from appellants on the balloon payment. Appellants did not make the September or October monthly installments. Some communications passed between the parties in an attempt to settle payment of the note, but they reached no agreement.

At the end of October, Loren Colman visited the store and found very little remaining inventory. An employee told him the storage area of the store had been filled with bicycle inventory only a few days earlier. On November 6, the Colmans' attorney received a letter from appellants' attorney, which stated that unless the Colmans accepted the return of the business within ten days, the Mertes would "liquidate all of the inventory and close the store."

On November 11, the Colmans served appellants with a summons and complaint, claiming breach of contract and default on the promissory note, and requesting judgment for the unpaid balance on the note. The next day, respondents applied for a preliminary writ of attachment. Documents submitted in support of the application were the summons and complaint, the sales contract, the promissory note, the security agreement, the letter of November 6, and Loren Colman's affidavit describing his visit to the store.

The trial court issued an order for writ of attachment, authorizing the attachment of (1) all property located at the store and (2) bicycles or skis used for retail sale that were located at the Mertes' residence. The sheriff executed the writ by changing the locks on the store, thereby securing the inventory, equipment, and other assets found there. The sheriff also went to the Mertes home, found the garage unlocked, and removed bicycles and skis found there.

Pursuant to the attachment statute, the trial court held a hearing to consider appellants' challenge to the grounds supporting the attachment. The court upheld the writ, stating that respondents' application for the preliminary attachment presented circumstances justifying a prehearing seizure of property, including: "Failure to make payments as required, removal of inventory from the business premises, and threats to immediately liquidate the business due to business failures."

The court ordered that all inventory remain subject to the attachment. In addition, the court granted respondents' motion to convert the proceeding to an action in replevin and ordered a sale of the assets, pursuant to the provisions of the Uniform Commercial Code. The court later denied appellants' motion to vacate the preliminary attachment order, noting again that respondents had established sufficient grounds under the attachment statute to warrant not only the issuance of the order but to warrant its issuance ex parte.

Michael and Jill Mertes appeal, claiming respondents did not meet the statutory requirements for prehearing attachments. They also allege a denial of due process due to a failure to comply with the requirements of the replevin statute. Appellants request vacation of the writ of attachment and the replevin order, and further request a remand to the trial court for entry of judgment and an award of actual damages, including attorney fees, and punitive damages.

## ISSUES

1. Did the trial court err in issuing the preliminary attachment order?

2. Did the trial court err in issuing the replevin order?

## ANALYSIS

1. Appellants claim respondents failed to comply with the requirements of Minnesota's statute on attachment, Minnesota

Statutes ch. 570, and that therefore the writ of attachment must be vacated. When a claimant brings a civil action for the recovery of money, Chapter 570 permits the claimant to attach the defendant's property, "as security for the satisfaction of any judgment that the claimant may recover." Minn.Stat. § 570.01 (1986).

Under ordinary circumstances, a claimant must proceed by motion, and an order of attachment may issue only after notice and a hearing. Minn.Stat. § 570.026 (1986). Under "extraordinary circumstances," however, a claimant may apply, as the Colmans did, for a preliminary attachment order "to secure property prior to the hearing specified in section 570.026." Minn.Stat. § 570.025, subd. 1 (1986). Such an order may be issued only if the following conditions are met:

> (1) the claimant has made a good faith effort to inform the respondent of the application for a preliminary attachment order or that informing the respondent would endanger the ability of the claimant to recover upon a judgment subsequently awarded;

> (2) the claimant has demonstrated the probability of success on the merits;

> (3) the claimant has demonstrated the existence of one or more of the grounds specified in section 570.02, subdivision 1, clause (1), (2), or (3); and

> (4) due to extraordinary circumstances, the claimant's interests cannot be protected pending a hearing by an appropriate order of the court, other than by directing a prehearing seizure of property.

*Id.*, subd. 2 (1986).

■ Appellants claim respondents did not meet three of the four statutory conditions. First, appellants contend respondents did not make a good faith effort to notify them of the application for a preliminary attachment order or show that informing them would endanger the Colmans' ability to recover upon subsequent judgment. *See id.*, subd. 2(1). The record does not support either claim. Respondents documented their good faith efforts to notify appellants of the application. Al-

ternatively, appellants' warning that they would liquidate the inventory unless the Colmans accepted the return of the business within ten days and the evidence that they may have already started such liquidation justifies a finding that informing appellants would have endangered the Colmans' later ability to obtain satisfaction of a judgment.

■ Second, the Mertes argue respondents did not demonstrate the existence of one or more of the statutory grounds "specified in section 570.02, subdivision 1, clause (1), (2), or (3)." *Id.*, subd. 2(3). The trial court relied expressly on clause (1), finding that "the removal of large amounts of inventory from the business location * * by [the Mertes] constitutes secreting or disposing of non-exempt property, within the context of Minn.Stat. § 570.02, subd. 1(1)."

In making its determination, the trial court considered Loren Colman's affidavit, which described his visit to the store and the small amount of inventory remaining in the store. The court also reviewed the letter written to respondents' attorney by appellants' attorney, in which the attorney states that the Mertes "will liquidate all of the inventory and close the store" unless respondents agree to accept the return of the store in satisfaction of the promissory note. This evidence is competent and sufficient to support a finding that the Mertes had secreted or disposed of, or were about to secrete or dispose of, the non-exempt property.

■ Third, appellants claim respondents presented insufficient evidence of "extraordinary circumstances." Minn.Stat. § 570.025, subd. 2(4). They insist it is "inconceivable" that extraordinary circumstances existed, given their express willingness to return the entire store and inventory to the Colmans. We cannot agree. At the time the Colmans petitioned for the ex parte order of attachment, the Colmans' interests far exceeded the value of the store and inventory. Loren Colman's affidavit, the admitted $5100 arrearage on the promissory note, and appellants' letter of November 6 demonstrated appellants' precarious fi-

nancial situation. Moreover, the Colmans' interests were inextricably tied to the inventory as it was the only collateral securing the promissory note. The Colmans had no duty to accept the return of the store and the inventory in return for satisfaction of the promissory note, when the amount owed on the note far exceeded the value of the store and inventory.

■ Appellants separately claim the content of the trial court's order did not comport with the statutory requirements. A preliminary attachment order must contain specific findings of fact, based on competent evidence, supporting the conclusion that the statutory conditions have been met. *Id.*, subd. 3(2). The order must also be narrowly drafted to minimize any harm resulting from the seizure of property and, to the extent possible, specify the property to be seized. *Id.*, subd. 3(3), (4).

Appellants' objections to the adequacy of the trial court's order are not well taken. The court's findings adequately explain the basis for its conclusions and are supported by sufficient competent evidence in the record. Appellants have not demonstrated any avoidable harm, and any complaints with the breadth or specificity of the order were answered by the court's later amendments to the initial order.

In sum, the trial court precisely complied with the statutory requirements for an order for preliminary attachment. Further, the grounds supporting attachment were fully addressed in the hearing held pursuant to statute, after which the trial court upheld the writ. On appellants' motion to vacate, the trial court reviewed appellant's objections yet another time, and again reaffirmed its determination. Appellants have not demonstrated any clear error requiring a remand to the trial court for failure to properly apply the applicable statutory provisions. *See* Minn.R.Civ.P. 52.01.

2. Appellants also claim the trial court improperly permitted the conversion of the attachment proceeding into a replevin proceeding. They state the court ignored the requirements of the replevin statute, Minn. Stat. ch. 565.

■ There are many similarities between an action in replevin and an attachment proceeding. Both are strictly statutory. The application procedures, grounds, and requirements for notice and hearing are nearly identical. *Compare* Minn.Stat. § 570.025 (preliminary attachment order) *with* Minn.Stat. § 565.24 (prehearing replevin). In an attachment proceeding, however, the creditor acts only to secure satisfaction of a money judgment in a pending civil action, while in an action in replevin the creditor seeks to recover possession of personal property. Here, after noting that respondents have a perfected security interest in all the attached property, the trial court permitted the conversion to an action in replevin without requiring respondents to initiate a separate application under the replevin statute.

Appellants claim that the failure to strictly comply with the requirements of Chapter 565 denied them their constitutional right to due process, a right that the replevin statute is designed to guarantee. Because the grounds for both prehearing and posthearing replevin are nearly identical to the grounds for prehearing and posthearing attachment, and because the facts presented additionally demonstrate the Colmans' right to possession of the property, appellants have not shown that they were prejudiced or otherwise deprived of rights guaranteed by statute or by the constitution. Under the present factual circumstances, we find no reason to prohibit the conversion of the proceeding into an action in replevin.

**DECISION**

The trial court's orders and accompanying memoranda conform precisely to the statutory requirements and are supported by the evidence of record.

Affirmed.